**ELECTRONICALLY FILED**
**COURT OF COMMON PLEAS**
**Monday, October 31, 2022 11:07:17 AM**
**CASE NUMBER: 2022 CV 04931 Docket ID: 767627968**
**Mike Foley**
**CLERK OF COURTS MONTGOMERY COUNTY OHIO**

## IN THE COURT OF COMMON PLEAS
## FOR MONTGOMERY COUNTY, OHIO

| | |
|---|---|
| EUGENIE KIRENGA<br>1009 Highridge Avenue<br>Dayton, OH 45440 | ) CASE NO.<br>)<br>) JUDGE: |
| Plaintiff, | )<br>) |
| v. | ) **COMPLAINT FOR DAMAGES**<br>) **AND REINSTATEMENT** |
| CITY OF DAYTON<br>Human Relations Council<br>371 W. Second St., Ste 100<br>Dayton, OH 45402 | ) **JURY DEMAND ENDORSED**<br>) **HEREIN**<br>)<br>) |
| **-and-** | )<br>) |
| VERLETTA JACKSON<br>c/o City of Dayton<br>Human Relations Council<br>371 W. Second St., Ste 100<br>Dayton, OH 45402 | )<br>)<br>)<br>)<br>) |
| **-and-** | )<br>) |
| MIAMI VALLEY FAIR HOUSING CENTER,<br>INC.<br>505 Riverside Dr<br>Dayton, OH 45405 | )<br>)<br>)<br>) |
| **Serve also:** | )<br>) |
| MIAMI VALLEY FAIR HOUSING<br>CENTER, INC.<br>c/o James McCarthy (Statutory Agent)<br>505 Riverside Drive<br>Dayton, OH 45405 | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>)<br>)<br>)<br>) |

Plaintiff, EUGENIE KIRENGA ("Kirenga"), by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

## PARTIES

1. Kirenga is a resident of the city of the city of Dayton, Montgomery County, Ohio.

2. Defendant CITY OF DAYTON is governed by a ten-member Board of Directors appointed by the Dayton City Commission, with its central location at 371 W. Second St., Ste 100, Dayton, OH 45402.

3. Defendant CITY OF DAYTON is a city within the state of Ohio.

4. Defendant CITY OF DAYTON ("CDHRC") is in charge of its Human Relations Council, where Plaintiff was formerly employed.

5. The relevant location of events and omissions of this Complaint took place at CDHRC's location at the surrounding areas it serves.

6. Defendant Miami Valley Fair Housing Center, Inc. ("MVFHC") is a domestic-incorporated non-profit that conducts business throughout the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 505 Riverside Drive, Dayton, OH 45405.

7. MVFHC and CDHRC, and was at all times hereinafter mentioned, Kirenga's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C § 2000e, and R.C. § 4112 *et seq*. (Collectively referred to as "Defendants").

8. Upon information and belief, Defendant VERLETTA JACKSON is a resident of Ohio.

9. Defendant VERLETTA JACKSON are and were at all times hereinafter mentioned, owner, manager, supervisor, and/or agent, and as such, are employer within the meaning of R.C. § 4111 et seq., and R.C. § 4101 et seq.

2

10. At all times referenced herein, Defendant VERLETTA JACKSON ("Defendant Jackson") was Plaintiff's employer within the meaning of R.C. 4112.01(A)(2).

11. Within 300 days of the adverse employment actions described herein, Kirenga filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-00922 ("EEOC Charge"), against CDHRC.

12. On August 29, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Kirenga regarding the EEOC Charge.

13. Kirenga received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

14. Kirenga had filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

15. Within 300 days of the adverse employment actions described herein, Kirenga filed a Charge of Discrimination with the EEOC, Charge No. 473-2022-00929, against MVFHC.

16. On September 26, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Kirenga regarding the EEOC Charge.

17. Kirenga received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 2.

18. Kirenga had filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

19. Kirenga had properly exhausted all administrative remedies against CDHRC and MVFHC pursuant to 29 C.R.F. § 1614.407(b).

20. Throughout the remainder of this Complaint, CDHRC and MVFHC will be collectively referred to as "Defendants".

3

## JURISDICTION & VENUE

21. The material events alleged in this Complaint occurred in or around Montgomery County, Ohio.

22. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).

23. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

24. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

25. Kirenga is a former employee of Defendants.

26. Kirenga worked as an Immigrant Resource Specialist from August 2014 until Defendants unlawfully terminated her employment on or about December 20, 2021.

27. Kirenga had an exemplary employment record, with no history of discipline during her time at Defendants.

28. Kirenga identifies as African, and therefore in a protected class for race.

29. Kirenga was born in Rwanda, and therefore in a protected class for her national origin.

30. While employed with Defendants, Kirenga was working with the Welcome Dayton program.

31. On or about May 7, 2021, Kirenga received a notice from Matthew Joseph (Caucasian) ("Joseph"), City Commissioner of Dayton, (Caucasian, born in the United States) that the Welcome Dayton program would be shifting to a new department.

32. On or around this same date, Joseph verbally notified Kirenga that she would be hired by the Dayton Planning Department full-time.

4

33. This was very exciting for Kirenga, as she had been working for Defendants for about seven years.

34. On or around this same date, Defendants posted Kirenga's current position of an Immigrant Resource Specialist under a new position titled as Community Engagement Specialist.

35. Defendants also posted a new position titled the Welcome Dayton Coordinator, which would have acted as a promotion for Kirenga.

36. Thus, Kirenga decided to apply for both positions, considering that the new position of Community Engagement Specialist involved the same duties under her current position as an Immigrant Resource Specialist.

37. Once the Welcome Dayton program switched departments, Kirenga began experiencing harassment from her new supervisor, Defendant Jackson (African American, born in the United States).

38. For example, Kirenga told Defendant Jackson that she experienced back problems and that the chair she used was uncomfortable.

39. The chair was so uncomfortable that Kirenga often had to stand throughout the day because of her back pain. Kirenga was also needing to visit her doctor to treat the back pain treatment.

40. As a result, Kirenga approached Jackson and stated that she was needing a different chair with better support. Defendant Jackson responded angrily and ignored Kirenga's request for a new chair.

41. Interestingly, there were other offices that were empty with chairs that were not being used. Kirenga asked Defendant Jackson if she could use one of the chairs from the empty office, as they appeared to be more comfortable.

5

42. Still, Defendant Jackson told Kirenga that she was not permitted to have a new chair, even from an empty, unused office.

43. Additionally, Defendant Jackson began to exclude Kirenga from monthly and weekly meetings. Kirenga would learn from other coworkers that she had not been invited to these meetings.

44. Defendant Jackson also made it abundantly clear to Kirenga that she could not apply for both the Community Engagement Specialist position and the Welcome Dayton Coordinator position.

45. Interestingly, Defendant Jackson never provided Kirenga with a legitimate reason as to why Kirenga could not apply for both positions.

46. Defendant Jackson did not prevent Caucasian individuals or individuals born in the United States from applying for the positions.

47. Nevertheless, Kirenga applied for both positions.

48. On or about July 27, 2021, Kirenga had her first interview for the Community Engagement Specialist position, which included Jackson on the interview panel.

49. Kirenga believed the interview went well, until Jackson yelled at Kirenga that she could not apply for both positions and that she could only pursue one position.

50. Again, Jackson failed to provide an adequate reason for this fabricated rule. More importantly, Kirenga was more than qualified for both positions.

51. On or about July 28, 2021, Kirenga received a call from Human Resources, Tania Foster (African American, born in the United States) ("Foster") asking if Kirenga had refused the Community Engagement Specialist position.

52. Kirenga was befuddled, as she had never expressed to any individual that she refused the Community Engagement position.

53. Foster told Kirenga that she would clarify the matter with Jackson and get back with Kirenga, but Foster never gave Kirenga a call back.

54. Later, Kirenga was contacted by Executive Director, Erica Fields (African American, born in the United States) ("Fields"), asking if Kirenga had refused the Community Engagement position.

55. Again, Kirenga was confused as to why another individual would ask her this question. Fields notified Kirenga that this information had been provided to her by Jackson.

56. On or about July 29, 2021, Kirenga received an email from Jackson saying, "please confirm your statement that you are not interested in the Community Engagement Specialist position."

57. Kirenga responded clarifying that she was in fact interested in both positions and asked Jackson to let her know if there was a rule that prevented her from interviewing for both postings.

58. Again, Kirenga did not receive a reason as to why she could not apply for both positions.

59. On or about August 26, 2021, Kirenga had her second interview for the Community Engagement Specialist position.

60. On or about September 9, 2021, Kirenga had an interview for the Welcome Dayton Coordinator position. Both interviews included Jackson on the interview panel.

61. On or about November 11, 2021, Kirenga received a letter that she was being terminated on December 20, 2021.

62. On or about November 21, 2021, Kirenga emailed the Director of Human Resources, Kenneth Couch (Caucasian) that she believed she was being mistreated, was being terminated unfairly,

and asked for an investigation to be conducted based on the events that have been iterated above.

63. This was a protected complaint of discrimination.

64. To the best of Kirenga's knowledge and belief, an investigation was never conducted.

65. Additionally, Defendants had hired a Swedish individual born in the United States for the Welcome Dayton Coordinator, who had less experience than Kirenga and was less qualified.

66. To the best of Plaintiff's knowledge, this individual who was hired for the Welcome Dayton Coordinate position is the wife of Matthew Joseph.

67. This was a failure to promote Kirenga, and Defendants terminated her employment on December 20, 2021.

68. Defendants' termination of the Kirenga was an adverse employment actions against her.

69. There was a causal connection between the Kirenga's protected class and actions, and Defendants' adverse actions taken against her.

70. Defendants' purported reasons for the Kirenga's terminations were pretextual.

71. Kirenga incurred emotional distress damages as a result of Defendants' conduct described herein.

72. As a direct and proximate result of Defendants' acts and omissions, Kirenga has suffered and will continue to suffer damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF
### R.C. §4112, *et seq.*
### (Defendants CDHRC and MVFHC Only)

73. Kirenga restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

74. Throughout her employment, Kirenga was fully competent to perform her essential job duties.

75. Defendants treated Kirenga differently than other similarly situated employees based on her race.

76. Defendants violated R.C. § 4112.02(A) *et seq.*by discriminating against Kirenga due to her race.

77. Defendants' termination of Kirenga's employment was an adverse employment action against her.

78. Defendants actually terminated Kirenga's employment due to her race.

79. Defendants' purported reason for Kirenga's employment termination was pretextual.

80. Defendants violated R.C. § 4112 *et seq.* by terminating Kirenga's employment because of her race.

81. Defendants violated R.C. § 4112 *et seq.* by treating Kirenga differently from other similarly situated employees outside her protected class.

82. Defendants violated R.C. § 4112 *et seq.* by applying their employment policies in a disparate manner based on Kirenga's race.

83. Defendants violated R.C. § 4112 *et seq.* by applying their disciplinary policies in a disparate manner based on Kirenga's race.

84. As a direct and proximate result of Defendants acts and omissions, Kirenga has suffered and will continue to suffer damages.

### COUNT II: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.* (Defendants CDHRC and MVFHC Only)

85. Kirenga restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

86. Kirenga was born in Rwanda, thus in a protected class for her national.

87. Throughout his employment, Kirenga was fully competent to perform her essential job duties.

88. Defendants treated Kirenga differently than other similarly situated employees based on her national origin.

89. Defendants violated R.C. § 4112.02(A) *et seq.*by discriminating against Kirenga due to her national origin.

90. Defendants termination of Kirenga's employment was an adverse employment action against her.

91. Defendants actually terminated Kirenga's employment due to her national origin.

92. Defendants purported reason for Kirenga's employment termination was pretextual.

93. Defendants violated R.C. § 4112 *et seq.* by terminating Kirenga's employment because of her national origin.

94. Defendants violated R.C. § 4112 *et seq.* by treating Kirenga differently from other similarly situated employees outside her protected class.

95. Defendants violated R.C. § 4112 *et seq.* by applying its employment policies in a disparate manner based on Kirenga's national origin.

96. Defendants violated R.C. § 4112 *et seq.* by applying its disciplinary policies in a disparate manner based on Kirenga's national origin.

97. As a direct and proximate result of Defendant's acts and omissions, Kirenga has suffered and will continue to suffer damages.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendants CDHRC and MVFHC Only)

98. Kirenga restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. Kirenga is African, thus placing her in a protected class for her race.

10

100. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

101. Defendants terminated Kirenga based on her race.

102. Defendants termination of Kirenga's employment was an adverse employment action against her.

103. Defenddnats purported reason for Kirenga's employment termination was pretextual.

104. Defendants actually terminated Kirenga's employment due to her race origin.

105. Defendants violated Title VII by terminating Kirenga's employment because of her race.

106. Defendants violated Title VII by treating Kirenga differently from other similarly situated employees outside her protected class.

107. Defendants violated Title VII by applying its employment policies in a disparate manner based on Kirenga's race.

108. Defendants violated Title VII by applying its disciplinary policies in a disparate manner based on Kirenga's race.

109. As a direct and proximate result of Defendants' acts and omissions, Kirenga has suffered and will continue to suffer damages.

## COUNT IV: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendants CDHRC and MVFHC Only)

110. Kirenga restates each and every prior paragraph of this Complaint, as if it were fully restated herein

111. Kirenga was born in Rwanda, thus placing her in a protected class for her national origin.

112. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's national origin.

113. Defendants terminated Kirenga based on her national origin.

11

114.    Defendants termination of Kirenga's employment was an adverse employment action against her.

115.    Defendants purported reason for Kirenga's employment termination was pretextual.

116.    Defendants actually terminated Kirenga's employment due to her national origin.

117.    Defendants violated Title VII by terminating Kirenga's employment because of her national origin.

118.    Defendants violated Title VII by treating Kirenga differently from other similarly situated employees outside her protected class.

119.    Defendants violated Title VII by applying its employment policies in a disparate manner based on Kirenga's national origin.

120.    Defendants violated Title VII by applying its disciplinary policies in a disparate manner based on Kirenga's national origin.

121.    As a direct and proximate result of Defendants' acts and omissions, Kirenga has suffered and will continue to suffer damages.

## COUNT V: FAILURE TO PROMOTE BASED ON NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112 *et seq.* (Defendants CDHRC and MVFHC Only)

122.    Kirenga restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123.    Kirenga is African, and thus is in a protected class for her nation of origin.

124.    R.C. § 4112.02 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's nation of origin.

125.    Defendants treated Kirenga differently than other similarly situated employees based upon her nation of origin.

12

126. Defendants' failure to adequately address Kirenga's complaints of disparate treatment in the workplace was an adverse employment action against her.

127. Further, Defendants' failure to promote Kirenga for the Welcome Dayton Coordinator position because of her nation of origin was an adverse employment action against him.

128. Defendants were almost entirely staffed by individuals born in the United States.

129. Kirenga was born in Rwanda.

130. Kirenga was qualified to work as the Welcome Dayton Coordinator.

131. Kirenga applied for a position as the Welcome Dayton Coordinator.

132. Defendants passed over Kirenga for the position, instead choose a Caucasian individual born in the United States.

133. When Kirenga asked why she was not permitted to apply to the Welcome Dayton Coordinator position, Defendants could not give an adequate answer.

134. Defendants' failure to promote Kirenga because of her nation of origin was an adverse employment action against her.

135. Defendants' purported reason(s) for failing to promote Kirenga was pretextual.

136. Defendants actually chose not to promote Kirenga because of her nation of origin.

137. Defendants violated R.C. § 4112.02 by failing to promote Kirenga because of her nation of origin.

138. Defendants violated R.C. § 4112.02 by treating Kirenga differently from other similarly situated employees outside his protected class.

139. Defendants violated R.C. § 4112.02 by applying their employment policies in a disparate manner based on Kirenga's nation or origin.

140.    As a direct and proximate result of Defendants' acts and omissions, Kirenga has suffered and will continue to suffer damages.

## COUNT VI: FAILURE TO PROMOTE BASED ON RACE DISCRIMINATION IN VIOLATION OF TITLE VII

141.    Kirenga restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142.    Kirenga is African, and thus is in a protected class for her race.

143.    Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

144.    Defendants treated Kirenga differently than other similarly situated employees based upon her race.

145.    Defendants' failure to adequately address Kirenga's complaints of disparate treatment in the workplace was an adverse employment action against her.

146.    Further, Defendants' failure to promote Kirenga for the Welcome Dayton Coordinator position because of her nation of origin was an adverse employment action against him.

147.    Defendants were almost entirely staffed by Caucasian individuals.

148.    Kirenga is African.

149.    Kirenga was qualified to work as the Welcome Dayton Coordinator.

150.    Kirenga applied for a position as the Welcome Dayton Coordinator.

151.    When Kirenga asked why she was not permitted to apply to the Welcome Dayton Coordinator position, Defendants could not give an adequate answer.

152.    Defendants' failure to promote Kirenga because of her race was an adverse employment action against her.

153.    Defendants' purported reason(s) for failing to promote Kirenga was pretextual.

14

154.    Defendants actually chose not to promote Kirenga because of her race.

155.    Defendants violated Title VII by failing to promote Kirenga because of her race.

156.    Defendants violated Title VII by treating Kirenga differently from other similarly situated employees outside his protected class.

157.    Defendants violated Title VII by applying their employment policies in a disparate manner based on Kirenga's race.

158.    As a direct and proximate result of Defendants' acts and omissions, Kirenga has suffered and will continue to suffer damages.

## COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Defendant Verletta Jackson Only)

159.    Kirenga restates each and every prior paragraph of this complaint, as if it were fully restated herein.

160.    Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

161.    Defendant Jackson aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Kirenga.

162.    Defendant Jackson aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Kirenga.

163.    Defendant Jackson violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination against Kirenga.

164.     As a direct and proximate result of Defendant Jackson's conduct, Kirenga has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VIII:  RETALIATION

165.     Kirenga restates each and every prior paragraph of this complaint, as if it were fully restated herein.

166.     As a result of the Defendants' discriminatory conduct described above, Kirenga complained of the disparate treatment she was experiencing.

167.     Subsequent to Kirenga's complaints to management about disparate treatment toward her, Defendants took adverse employment actions against Kirenga, including terminating her employment.

168.     Defendants' actions were retaliatory in nature based on Kirenga's opposition to the unlawful discriminatory conduct.

169.     Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

170.     As a direct and proximate result of Defendants' retaliatory discrimination against and discharge of Kirenga, she has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Kirenga demands from Defendants the following:

16

(a) Issue an order requiring Defendants CDHRC and MVFHC to restore Kirenga to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Kirenga for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendants in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Kirenga claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

_/s/ Brianna R. Miller_
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
        Trial Attorney
Brianna R. Miller (Carden) (0097961)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Miller@SpitzLawFirm.com

*Attorneys for Plaintiff Eugenie Kirenga*

17

## **JURY DEMAND**

Plaintiff Eugenie Kirenga demands a trial by jury by the maximum number of jurors permitted.

_/s/ Brianna R. Miller_
Brianna R. Miller (0097961)

U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

August 29, 2022

Ms. Eugenie Kirenga
c/o Brianna Carden, Esquire
Spitz Law Firm
11260 Chester Road
Suite 825
Cincinnati, OH  45246

Re:  EEOC Charge Against City of Dayton, Ohio, et al.
     No. 473202200922

Dear Ms. Kirenga:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Cincinnati Area Office, Cincinnati, OH.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,


                              Kristen Clarke
                         Assistant Attorney General
                            Civil Rights Division


                    by        /s/ Karen L. Ferguson
                            Karen L. Ferguson
                       Supervisory Civil Rights Analyst
                       Employment Litigation Section


cc: Cincinnati Area Office, EEOC
   City of Dayton, Ohio, et al.

                                                        Exhibit 1

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Cincinnati Area Office**
550 Main Street, Suite 10-191
Cincinnati, OH 45202
(513) 914-6007
Website:  www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/26/2022

**To:** Eugenie Kirenga
3298 Montpelier Dr
Dayton, OH 45440
Charge No: 473-2022-00929

EEOC Representative and email:     Amy Trzop-Vos
Investigator
amy.trzop-vos@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 473-2022-00929.

On behalf of the Commission,

Digitally Signed By: Michelle Eisele/atv
09/26/2022

Michelle Eisele
Indianapolis District Director

Exhibit 2

**cc:**
Brianna Miller
The Spitz Law Firm
11260 Chester Rd, Suite 825 Suite 825
Cincinnati, OH 45246

Jim McCarthy
President/CEO
Miami Valley Fair Housing Center
505 Riverside Dr.
Dayton, OH 45405

**Please retain this notice for your records.**

Enclosure with EEOC Notice of Closure and Rights (01/22)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

#### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

#### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

#### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 473-2022-00929 to the District Director at Michelle Eisele, 1010 West Ohio St Suite 1900, Indianapolis, IN 46204.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.